947 So.2d 993 (2006)
Roy Lee TILLMAN, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01260-COA.
Court of Appeals of Mississippi.
July 18, 2006.
Rehearing Denied November 7, 2006.
*994 David L. Walker, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. A Tate County jury convicted Roy Tillman, Jr. of sexual battery and fondling of a child. The Tate County Circuit Court sentenced Tillman to twenty years, with five years of post-release supervision on the sexual battery charge and fifteen years on the fondling of a child charge in the custody of the Mississippi Department of Corrections. The court ordered that the fondling sentence be served concurrently with the sexual battery sentence. Aggrieved, Tillman appeals and alleges the following errors: (1) whether the trial court erred in overruling his objection to the State's motion to have the public excluded from the courtroom during the testimony of J.T,[1] and (2) whether the trial court erred in ruling that J.T. was competent to testify at trial.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. The basis for the charges against Tillman is that he sexually assaulted his live-in girlfriend's daughter for over a year. The testimony at trial established that Tillman had lived with J.T.'s mother, M.T., and her children for over a period of seven years, serving as a father figure for the children. According to J.T., at about the age of thirteen or fourteen, Tillman began "messing with her." J.T. testified that Tillman started off by rubbing her buttocks and breasts. She further testified that the sexual abuse progressed to the point where Tillman placed his finger inside her vagina and performed oral sex on her. J.T. testified that Tillman "messed with her" at least three or four times a week, but he never engaged in vaginal intercourse with her.
¶ 4. After M.T. learned of the abuse from family members, she set up a video camera in J.T.'s room without any knowledge by J.T. or Tillman. Tillman was recorded coming into J.T.'s room at night and rubbing and touching her as she slept. On the recorded occasion, J.T. eventually woke up and kicked at Tillman until he stopped and went away. The videotape of this incident was turned over to the Tate County Sheriff's Department, and Tillman was subsequently arrested and charged with sexual battery and fondling of a child.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Excluding the Public from the Courtroom
¶ 5. Tillman argues that the United States and Mississippi Constitutions guarantee him a right to a public trial. He maintains that "if one is going to make *995 accusations such as these, one should be prepared to be confronted by the accuser in an open courtroom available to the general public and family members of either side." Tillman further argues that his constitutional rights to a public trial outweigh any "embarrassment" J.T. may have felt by having to give, in a courtroom open to the public, explicit details of the sexual abuse she had suffered.
¶ 6. The State recognizes that the United States and Mississippi constitutions afford the accused a right to a public trial. However, the State argues that this right is not absolute, as "it must be balanced against other interests essential to the administration of justice." The State correctly points out that various federal courts and the Mississippi Supreme Court have held that a court may exclude the public "to the extent necessary to avoid embarrassment or emotional disturbance to a witness which might result from that witness's giving testimony in a particular case." Lee v. State, 529 So.2d 181, 183 (Miss.1988).
¶ 7. "Generally, a defendant has a constitutional right to a public trial. However, that right is not absolute, but instead must be balanced against other interests essential to the administration of justice." Bailey v. State, 729 So.2d 1255, 1260(¶ 24) (Miss.1999) (overruled on other grounds) (citing Waller v. Georgia, 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)). The Mississippi Constitution explicitly authorizes the exclusion of the public in certain instances, as Article 3, Section 26 provides, in pertinent part, that "in prosecutions for rape, adultery, fornication, sodomy, or crimes against nature the court may, in its discretion, exclude from the courtroom all persons except such as are necessary in the conduct of the trial." Although the United States Constitution does not explicitly provide for exclusion of the public during the course of a trial, federal courts have recognized certain instances in which exclusion may be appropriate. Id. Nevertheless, "any exclusion of the public must satisfy both the Mississippi Constitution and the United States Constitution." Id.
¶ 8. In Waller, the United States Supreme Court established a test for determining whether a defendant's right to a public trial is outweighed by other considerations. The court held that:
the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
Waller, 467 U.S. at 48, 104 S.Ct. 2210. The Mississippi Supreme Court "adopted the Waller test in Gannett River States Publ'g Co. v. Hand, 571 So.2d 941, 945 (Miss.1990)." Bailey, 729 So.2d at 1261(¶ 29).
¶ 9. Here, the trial court noted that the allegations involved acts of sexual penetration, more specifically, oral sex and digital penetration, as well as acts of fondling that occurred over a period of time. The court also recognized the sensitive nature of the testimony and the emotional state of J.T. due to the sexual abuse. Therefore, based on Article 3, Section 26, the facts of the case, the age of the child, and the family dynamics (the families of J.T. and Tillman were intertwined as members of the families were related to both J.T. and Tillman), the court found it appropriate to close the courtroom to everyone except necessary court personnel during J.T.'s testimony. The court ruled that Tillman, his attorney, and necessary court personnel would be allowed to be present *996 during J.T.'s testimony. Everyone else was required to vacate the courtroom but were allowed to return at the conclusion of J.T.'s testimony. We note that J.T. was the first witness called to testify and that the public was allowed to be present in the courtroom for the remainder of the trial.
¶ 10. We find that the trial court's actions were sufficient to pass the Waller test. Additionally, Article 3, Section 26 of the Mississippi Constitution gives a judge discretion to close a trial to the public in certain instances. We recognize that the crimes Tillman was charged with committing do not fall within the category of crimes enumerated in Article 3, Section 26. However, given the nature and substance of J.T.'s allegations, we note that her allegations are of the type contemplated by this provision and are of the type for which this provision was designed. Furthermore, the Mississippi Supreme Court has held that "public exclusion may be appropriate to the extent necessary to avoid embarrassment or emotional disturbance to a witness which might result from that witness giving testimony in a particular case." Lee, 529 So.2d at 183. This case, which required a teenage girl to testify to potentially embarrassing or emotionally disturbing facts of a very sensitive and personal nature, clearly falls within the category of instances in which public exclusion is appropriate. This issue is without merit.
2. J.T.'s Competency to Testify
¶ 11. Tillman recognizes that a trial court is given great deference in its determination that a child witness is competent to testify. However, he argues that the trial court erred and abused its discretion in finding that J.T. was competent to testify. Apparently, the basis for Tillman's argument lies in the fact that, on cross-examination, J.T. testified that she did not know the consequences of her not telling the truth on the stand. We note that on redirect J.T. testified that although she did not exactly know what the consequences of her not telling the truth might be, she did realize that they would probably entail some jail time.
¶ 12. The State argues that "it is in the sound discretion of the trial judge to determine the competency of a child witness." The State further argues that "the reviewing court should affirm unless the trial judge abused that discretion." The State points out that the trial judge conducted an in camera examination of J.T. in which the judge asked J.T. a series of questions before making the determination that she was competent to testify.
¶ 13. In reference to the testimony of child witnesses, the Mississippi Supreme Court has held the following:
Mississippi courts generally allow children of tender years to testify if competent. Rule 601 of the Mississippi Rules of Evidence provides that every person is competent to be a witness unless they are incompetent or otherwise restricted. It is in the sound discretion of the trial judge to determine the competency of a child witness. Before allowing the child to testify, the judge should determine "that the child has the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness."
Hersick v. State, 904 So.2d 116, 130(¶ 63) (Miss.2004) (quoting Mohr v. State, 584 So.2d 426, 431 (Miss.1991)). Therefore, pursuant to Rule 601, it is presumed that J.T. was a competent witness, absent some indication that she was not.
¶ 14. Here, the trial judge conducted an in camera examination of J.T. After a series of questions to test her competency to testify, the trial judge found that:

*997 J.T. is emotional today. She is teary, but she's certainly able to answer my questions. She appears to [sic] fifteen to sixteen years of age, as she said that she was. She certainly appears to be average, if not above average intelligence. She certainly impressed me as understanding the significance of taking an oath and answering questions truthfully. There was absolutely nothing in her demeanor or her responses that would indicate to this court that she's not competent to testify for any reason, and under our rules certainly she is presumed to be competent to testify and the court is going to allow her to testify. And she, of course, will be subjected to cross examination. As I said, I see no reason to require any further inquiry.
A review of the record reveals nothing that would indicate that J.T. was not a competent witness. J.T. exhibited normal intelligence. She had the ability to understand and answer questions asked of her, and she could remember explicit details about the sexual abuse that she had suffered. There is no indication that she was coerced or provoked into accusing Tillman of sexual abuse. Furthermore, there is nothing in the record that would indicate any mental deficiency or disease which would have affected J.T.'s competency to testify. Therefore, this issue is without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS OF POST-RELEASE SUPERVISION; COUNT II, FONDLING OF A CHILD, AND SENTENCE OF FIFTEEN YEARS TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] This case involves a minor. Therefore, in order to protect her identity, we use initials for her name and her mother's name. J.T. is the minor and M.T. is the mother.