# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00700-COA

| | |
|---|---|
| MATTHEW EDWARD PIERCE A/K/A MATTHEW PIERCE A/K/A MATTHEW E. PIERCE | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2016 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | ROBERT B. MCDUFF JACOB WAYNE HOWARD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 01/30/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Matthew Edward Pierce was convicted of photographing, taping, or filming a person in violation of an expectation of privacy pursuant to Mississippi Code Annotated section 97-29-63 (Rev. 2014) and sentenced to a term of five years in the custody of the Mississippi Department of Corrections, with three years suspended, leaving two years of incarceration, and three years of supervised probation. Pierce was required to register as a sex offender. He now appeals. Because we find reversible error, we reverse and remand.

FACTS

¶2.    S.A.[1] first began seeing Pierce, a licensed massage therapist, when he worked for a chiropractor in Long Beach, Mississippi.  When Pierce opened his own practice, S.A. followed him.  S.A. was a client of Pierce's for a total of two and a half years.

¶3.    On October 2, 2014, S.A. attended a scheduled appointment with Pierce.  When she arrived at the venue for her appointment, Pierce left the room, and S.A. undressed from the waist up, as she normally did for her massage appointments.  Pierce returned and performed S.A.'s massage.  Upon completion of the massage, Pierce again left the room to give S.A. privacy to re-dress.  As S.A. was dressing, she noticed that Pierce's iPhone was propped up against the backsplash of a counter opposite the table where the massage had taken place. The phone's camera was facing where she was standing and getting re-dressed.  Concerned that Pierce might have been videotaping her while she undressed or re-dressed, S.A. picked up the phone and saw that it had indeed been videotaping.  S.A. stopped the videotaping and sent the video to herself in a text message.  When Pierce returned to the room, S.A. confronted him about the video.  Pierce denied that he had intended to film her.  S.A. reported the incident to Detective Brad Gross with the Long Beach Police Department, and Pierce was subsequently arrested on October 3, 2014.

¶4.    On January 20, 2015, a grand jury of the First Judicial District of Harrison County indicted Pierce for secretly videotaping S.A in violation of section 97-29-63.  Pierce's trial

---

[1] The victim's initials will be used throughout this opinion to protect her privacy.

was held in Harrison County Circuit Court on April 5 and 6, 2016. Three witnesses testified: S.A., Detective Gross, and Pierce. Prior to opening statements, the State orally moved "to either close the courtroom to the general public during the victim's testimony or in the alternative, when we do play the video to at least turn the TV away from the general audience," because the video depicted S.A. while she was undressed. The State maintained that a surprisingly large number of people had shown up to watch the trial who had not been present at previous proceedings, and that it wished to "limit the number of people that actually see this video and see her naked." The defense objected. The trial court granted the State's motion and closed the courtroom for the entirety of S.A.'s testimony, noting that over thirty people had shown up for the trial who had not been present at previous proceedings, and that the majority of the audience was sitting on the defense's side of the courtroom.

¶5. After all three of the witnesses testified, the trial court issued its jury instructions. Pierce proposed Instruction D-2a, which provided the following:

> The [c]ourt instructs the jury that if you find that the cell-phone video was created as the result of accident and without unlawful intent, then you shall find the Defendant, Matthew Pierce, Not Guilty of Secretly Photographing, Taping, or Filming [S.A.], in a state of undress, without her permission and in violation of her expectation of privacy as charged in the indictment, and return your verdict as follows: "We, the Jury, find the Defendant, Matthew Pierce, Not guilty of Secretly Photographing, Taping, or Filming a person, in a state of undress, without her permission in violation of her expectation of privacy as charged in the indictment, by reason of accident.

The State objected and the trial court denied the instruction, finding that the instruction did not properly state the charge, nor did it properly state the form of the verdict. Further, the

3

trial judge stated, "I'm not aware that accident is a defense, per se, . . . to this type of charge"; however, the court provided: "If you guys can find [an instruction] that has to do with accidents specific to this type [of] charge, then I'm more than happy to consider it." Further, the court held that the exclusion of the defense's proposed instruction did not prohibit defense counsel "from arguing that there was no intent because that is in the elements instruction."

¶6.     The jury began its deliberations, and soon after sent a note (1) requesting the definition of "lewd, licentious or indecent intent"; (2) asking, "If S.A. saw camera [sic] does that change 'expectation of privacy'[?]"; and (3) asking, "If it was by accident[,] is it same thing same [sic] as knowing or is it lewd, licentious or indecent intent[?]" No further instruction was given to the jury. The jury next sent a note stating that it was deadlocked. After further deliberation, the jury finally found Pierce guilty of the charge against him.

¶7.     Pierce filed a motion for a new trial or a judgment notwithstanding the verdict (JNOV), which the trial court denied, leading to this appeal.

## DISCUSSION

1.    *Whether the trial court erred in closing the courtroom during the victim's testimony*

¶8.     The Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution both provide the accused in a criminal prosecution the right to a public trial. "However, that right is not absolute, but instead must be balanced against other interests essential to the administration of justice." *Tillman v. State*, 947 So. 2d 993, 995 (¶7)

4

(Miss. Ct. App. 2006). The Mississippi Constitution explicitly authorizes the exclusion of the public in certain instances, including "prosecutions for rape, adultery, fornication, sodomy, or crimes against nature." Miss. Const. art. 3, § 26. The United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39, 48 (1984), established a test for determining whether a defendant's right to a public trial is outweighed by other considerations, holding:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

The Mississippi Supreme Court adopted the "*Waller* test" in *Gannett River States Publishing Co. v. Hand*, 571 So. 2d 941, 945 (Miss. 1990).

¶9. Pierce argues that the trial court's remedy of closing the courtroom to the public during S.A.'s entire testimony was broader than necessary in light of the fact that it could have just turned the television away from the general audience. Pierce maintains that closing the courtroom to the public resulted in a violation of Pierce's right to a public trial under both the Federal and State Constitutions.

¶10. In response, the State maintains that the trial court did not err in excluding the public because it properly considered the requisite factors prior to deciding to close the courtroom, and that Pierce's right to a public trial was therefore not violated. Further, embracing the trial judge's observations, the State maintains that there was no more appropriate remedy to be taken than to close the courtroom to the public during her entire testimony. The court

noted that the layout of the courtroom prevented turning the television to only show the jury, and to exclude the public upon offering the video into evidence would result in abruptly halting S.A.'s testimony to allow for a "mass exodus," thereby drawing attention to S.A.'s upcoming testimony and to the video. The State cites *Tillman*, 947 So. 2d at 996 (¶10), in which this Court allowed the exclusion of the public where the crime at issue was not one specifically enumerated in Article 3, Section 26 of the Mississippi Constitution, but was a crime "of the type for which the provision was designed." The State presents the proposition from *Tillman* that "public exclusion may be appropriate to the extent necessary to avoid embarrassment or emotional disturbance to a witness which might result from that witness giving testimony in a particular case." *Id*. at 996 (¶10) (quoting *Lee v. State*, 529 So. 2d 181, 183 (Miss. 1988)).

¶11.    We understand that this case involves a sensitive topic, and we do not make light of the fact that the incident caused S.A. some embarrassment, which she had to continue to endure throughout the trial. However, a defendant is constitutionally entitled to a public trial for whatever heinous act of which he may be accused. Therefore, the courts must perform a sensitive balance in protecting a victim from unnecessary embarrassment while, at the same time, complying with a defendant's right to a public trial. Here, we find that the trial court, in executing that balance, erred in excluding the public during S.A.'s entire testimony. S.A.'s testimony was relatively lengthy in comparison to the other witnesses who testified during the trial. The only reason offered by the prosecution and cited by the trial court for closing

6

the courtroom to the public was that the video would be shown during S.A.'s testimony, showing her undressed from the waist up. The video lasted only one minute and fourteen seconds. We fail to see why it was necessary to exclude the public for S.A.'s *entire* testimony, merely to show a video lasting a little over one minute.

¶12.    In any event, accepting the court's statement as accurate—as we must—that it was not feasible to turn the television screen away from the general public, we see no logical reason why the closing of the courtroom could not have been delayed until the conclusion of all of the testimonies of witnesses offered by the State and the video shown to the jury just before the State rested its case. The video speaks for itself, and there was no rational reason or need to show it at the time of S.A.'s testimony. Her testimony was not needed to explain anything on the video. Normally, a break generally occurs at the conclusion of the State's case so that the court can entertain motions outside the presence of the jury. So it would have been an orderly procedure to close the courtroom—and allow the jury to view the video—before sending them to the jury room to allow the court to consider whatever motions may have been offered by the defense. Closing the courtroom at that time to show the video would have prevented the disruptive "mass exodus" during S.A.'s testimony about which the court was concerned, but, at the same time, would have allowed Pierce to have a fully public trial to which he was constitutionally entitled. Adopting this procedure also would have served the interest of not subjecting S.A. to unnecessary embarrassment or emotional disturbance by not allowing the public to view the video. However, the court's decision to close the

7

courtroom during S.A.'s entire testimony was overly broad and violative of Pierce's constitutional right to a public trial. While "most constitutional errors can be harmless," certain errors will be deemed "'structural' and thus subject to automatic reversal." *Neder v. United States*, 527 U.S. 1, 8 (1999). One such constitutional error is the denial of a public trial. *Id*. (citing *Waller*, 467 U.S. 39). As such, we reverse and remand.

¶13.    The dissent takes issue with our holding as it relates to the closing of the courtroom and relies on *Tillman* to support its argument that the trial court was justified in excluding the public from the entirety of S.A.'s testimony. However, there are two notable distinctions between *Tillman* and this case. First, the victim in *Tillman* was a teenager at the time that she testified. While the record in this case makes no mention of S.A.'s age, there is no evidence to suggest that she was not an adult at the time that the incident occurred. Second, the victim in *Tillman* testified to "acts of sexual penetration, more specifically, oral sex and digital penetration, as well as acts of fondling." *Tillman*, 947 So. 2d at 995 (¶9). Again, without diminishing the severity of the defendant's alleged intrusion upon S.A.'s privacy, the current case differs from *Tillman.* While the crimes in *Tillman* did not fall within the category enumerated in Article 3, Section 26, this Court found that, given the nature and substance of the minor's allegations, they were of the type that this provision was designed to address. S.A.'s testimony, describing what occurred as a result of her encounter with Pierce, shares no parallel with the testimony of the minor victim in *Tillman*, describing her encounter with the defendant there.

8

¶14.    Finally, the dissent maintains that this issue is improper for our consideration, because (1) Pierce never asked the trial judge to only close the courtroom during the time the video was shown, and (2) Pierce failed to offer alternatives to closing the courtroom during S.A.'s entire testimony.  First, this issue is properly before us because it was preserved at trial when Pierce's counsel objected to the closing of the courtroom.  Second, we are unaware of any caselaw requiring Pierce to have provided alternatives to closing the courtroom.  The burden to assure that a defendant is convicted without transgressing constitutional safeguards and protections lies with the State, and more specifically the trial court, not the defendant.

¶15.    In *Presley v. Georgia*, 558 U.S. 209, 214 (2010), the United States Supreme Court clearly held, as a matter of federal constitutional law, that "trial courts are required to consider alternatives to closure *even when they are not offered by the parties*." (Emphasis added).  According to the Supreme Court, the obligation "to take every reasonable measure to accommodate public attendance at criminal trials" rests on the trial court, not the parties. *Id.* at 215.  To this extent, United States Supreme Court precedent preempts our normal rule that an issue is waived if it is not presented to the trial court for decision.  *See post* at (¶30) (dissenting op.).

¶16.    The United States Supreme Court has also held, as a matter of federal constitutional law, that a violation of the right to a public trial is "a structural error, *i.e.*, an error entitling the defendant to automatic reversal without any inquiry into prejudice."  *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1905 (2017).  In *Presley*, the Supreme Court held that it was

9

reversible error to exclude the "lone courtroom observer," the defendant's uncle, from jury voir dire—even though the courtroom was not closed during any part of the presentation of evidence. *See Presley*, 558 U.S. at 210, 216.

¶17. "[T]his Court is under authority of the United States Supreme Court. . . . [A] decision of the United States Supreme Court . . . is binding on the tribunals and citizens of the respective states in comparable cases." *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965).

¶18. Applying these decisions of the United States Supreme Court requires this Court to reverse and remand this case for a new trial. On remand, the court may close the courtroom to the public but only while the video at issue is being played, as there is nothing about the content of S.A.'s testimony that warrants the closing of the courtroom during her testimony. Notwithstanding what we have said earlier concerning when the courtroom could have been closed, we want to be clear that nothing contained in this opinion shall be interpreted as dictating the timing of the closing of the courtroom, except as to when the video is played.

2. *Whether the trial court erred in denying the defense's jury instruction*

¶19. "Jury instructions are within the discretion of the trial court[,] and the settled standard of review is abuse of discretion." *Watkins v. State*, 101 So. 3d 628, 633 (¶16) (Miss. 2012) (citation omitted). When reviewing a challenge to jury instructions, this Court will read the instructions that were given as a whole to determine whether the instructions fairly announced the law and did not create an injustice against the defendant. *Crook v. State*, 105

So. 3d 353, 358 (¶13) (Miss. Ct. App. 2012).

¶20.    Pierce argues that the trial court erred when it denied his proposed jury instruction informing jurors that they must acquit him if they concluded that his actions were accidental. He maintains that this instruction was put forward as part of his defense theory.  In support of his argument, Pierce asserts that the Mississippi Supreme Court has consistently reversed convictions in which the trial court declined to give an accident instruction when accident was the theory of the defense, citing *Brown v. State*, 39 So. 3d 890, 900 (¶38) (Miss. 2010); *Chinn v. State*, 958 So. 2d 1223, 1226-27 (¶¶17-18) (Miss. 2007); and *Triplett v. State*, 666 So. 2d 1356, 1361-62 (Miss. 1995).  Pierce points out that, although most cases regarding accident involve homicide, this Court has also held that the principle applies to non-homicide cases. *See McTiller v. State*, 113 So. 3d 1284, 1291 (¶19) (Miss. Ct. App. 2013) (where this Court reversed a circuit court on the basis that it did not properly instruct the jury on accident in an aggravated-assault case).  In response, the State maintains that the instructions given fairly informed jurors that, in order to convict Pierce, they had to find that he acted "with lewd, licentious or indecent intent" when he "secretly photograph[ed], film[ed], videotape[d], record[ed] or otherwise reproduce[d] the image of [S.A.]" without her permission, when she "was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy."

¶21.    We agree with Pierce and find pursuant to a long line of Mississippi cases holding that defendants are entitled to jury instructions on their theory of defense—some of  which are

11

cited by Pierce and discussed earlier—that the trial court erred in denying his proposed jury instruction regarding accident. As noted, the State argues that the circuit court did not err in refusing to give Pierce's accident instruction because, given the wording of the element instruction, the jury had to find that Pierce acted "with lewd, licentious or indecent intent." An extrapolation from this argument is that the jury was properly instructed because subsumed in its guilty verdict is a finding that Pierce did not accidentally turn on the video-recording mechanism. However, the fallacy of this argument is that a reasonable finding by the jury with respect to one option given does not prove that another option should not have been given, even if it ultimately would have been rejected by the jury. In other words, the fact that the jury was given an element instruction does not prove that an accident instruction should not have been given. Whether the court properly refused an instruction is determined by an examination of the facts and the instructions that were given, in accordance with existing precedent, not by an interpretation of the jury's implicit finding as a result of an instruction that was given. Here, the sole theory of Pierce's defense was that the videotaping had occurred by accident, as he testified that he had brought the phone into the room to keep time and must have accidently turned it on while he had oil on his fingers. As such, we find that Pierce was entitled to an accident instruction. In light of our caselaw, the trial court's exclusion of such an instruction constitutes reversible error. Thus, for both of the foregoing reasons, we reverse the circuit court's judgment and remand the case for further proceedings consistent with this opinion.

¶22. **REVERSED AND REMANDED.**

**FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. LEE, C.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, CARLTON AND TINDELL, JJ.**

**GRIFFIS, P.J., DISSENTING:**

¶23. I respectfully dissent.

¶24. This case considers the compelling interest of the victim's right of privacy versus the defendant's right to a public trial. Pierce was charged with photographing, taping, or filming S.A. in violation of her privacy pursuant to Mississippi Code Annotated section 97-29-63(1)(a) (Rev. 2014).[2] The evidence offered to prove this crime was the recording that depicted S.A. "in a state of undress." This is a sex-crime case. As such, the courts of this state attempt to protect the victim from public embarrassment and humiliation.

¶25. As to the majority's recitation of the facts, I note that the majority fails to mention that the video shows Pierce setting up the phone camera just before he exited the room. There was clear evidence to show intent and that it was not an accident.

---

[2] Section 97-29-63(1)(a) (Rev. 2014) provides:

It is a felony for any person with lewd, licentious or indecent intent to photograph, film, videotape, record or otherwise reproduces the image of another person without the permission of the other person when the other person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom shall be guilty of a felony.

¶26. Next, I do not dispute the majority's legal authority. However, I come to a different conclusion. In *Tillman*, this Court cited the same legal authority and ruled:

> Here, the trial court noted that the allegations involved acts of sexual penetration, more specifically, oral sex and digital penetration, as well as acts of fondling that occurred over a period of time. The court also recognized the sensitive nature of the testimony and the emotional state of J.T. due to the sexual abuse. Therefore, based on Article 3, Section 26, the facts of the case, the age of the child, and the family dynamics (the families of J.T. and Tillman were intertwined as members of the families were related to both J.T. and Tillman), the court found it appropriate to close the courtroom to everyone except necessary court personnel during J.T.'s testimony. The court ruled that Tillman, his attorney, and necessary court personnel would be allowed to be present during J.T.'s testimony. Everyone else was required to vacate the courtroom but were allowed to return at the conclusion of J.T.'s testimony. We note that J.T. was the first witness called to testify and that the public was allowed to be present in the courtroom for the remainder of the trial.
>
> We find that the trial court's actions were sufficient to pass the *Waller* test. Additionally, Article 3, Section 26 of the Mississippi Constitution gives a judge discretion to close a trial to the public in certain instances. We recognize that the crimes Tillman was charged with committing do not fall within the category of crimes enumerated in Article 3, Section 26. However, given the nature and substance of J.T.'s allegations, we note that her allegations are of the type contemplated by this provision and are of the type for which this provision was designed. Furthermore, the Mississippi Supreme Court has held that "public exclusion may be appropriate to the extent necessary to avoid embarrassment or emotional disturbance to a witness which might result from that witness giving testimony in a particular case." *Lee* [*v. State*], 529 So. 2d [181,] 183 [(Miss. 1980)]. This case, which required a teenage girl to testify to potentially embarrassing or emotionally disturbing facts of a very sensitive and personal nature, clearly falls within the category of instances in which public exclusion is appropriate. This issue is without merit.

*Tillman v. State*, 947 So. 2d 993, 995-96 (¶¶9-10) (Miss. Ct. App. 2006).

¶27. Further, Mississippi Rule of Evidence 611(3) gives the circuit judge the authority and discretion to "exercise reasonable control over the mode and order of examining witnesses

14

and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment."

¶28.   Here, the public viewing of a young female victim's naked breasts is a "potentially embarrassing or emotionally disturbing fact[] of a very sensitive and personal nature." *Tillman*, 947 So. 2d at 996 (¶10).  Likewise, it "falls within the category of instances in which public exclusion is appropriate." *Id.*

¶29.   I also cannot agree with Pierce's argument that the trial court's decision to close the courtroom to the public *during S.A.'s entire testimony was broader than necessary* in light of the fact that the trial court could have just turned the television away from the general audience.  Based on my review of the transcript, Pierce's counsel never suggested that it would be an acceptable alternative to "turn the television away from the general audience." The State offered this alternative, and the trial court determined it was not feasible.  Despite the fact that the majority concludes that a reasonable alternative would have been to allow the video to be shown at the end of S.A.'s testimony, this alternative was not presented to the trial court.  Nevertheless, the trial court used its discretion to exercise reasonable control over the interrogation in a way that would prevent S.A. from suffering undue embarrassment. M.R.E. 611(a).  There is nothing in the record that would indicate that the trial court was in error in the decision that this alternative was not feasible.

¶30.   In fact, Pierce's counsel did not offer alternatives.  Instead, Pierce's counsel argued that the audience was entitled to see the video and that it was "important that [the video] is

15

seen by whoever." Pierce's counsel did not ask the trial judge to only close the courtroom during the time the video was shown. Accordingly, I do not believe that Pierce placed this matter before the trial judge for a decision. "We will not hold a trial court in error on appeal for a matter not presented to it for decision." *Moffett v. State*, 49 So. 3d 1073, 1101 (¶91) (Miss. 2010). Since Pierce's counsel did not offer an acceptable alternative, I cannot find the trial court in error on this issue. It is certainly not reversible error.

¶31. I recognize the United States Supreme Court's ruling in *Presley v. Georgia*, 558 U.S. 209, 214 (2010), that "trial courts are required to consider alternatives to closure *even when they are not offered by the parties*." (Emphasis added). According to the circuit judge, she did just that. She considered reasonable alternatives and rejected them. The mere fact that new appellate counsel and the judges of this Court can come up with additional "reasonable alternatives" does not result in reversible error by the trial judge. I am of the opinion that the trial judge complied with the requirements of *Presley*.

¶32. Because I would affirm the circuit court's judgment, I respectfully dissent.

**BARNES, CARLTON AND TINDELL, JJ., JOIN THIS OPINION.**