# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00585-SCT

*LARRY L. STUART a/k/a LARRY STUART*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2022 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | SCOTTY EDWARD CHABERT |
| | ROBERT GREER WHITACRE |
| | JACK LUCIAN DENTON |
| | KIMBERLY THOMAS HARLIN |
| | CARPENTER STEVENS MARSALIS |
| | LAUREL AMANDA RUTH BLUE |
| | DANIEL AUSTEN SILKMAN |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE M. McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/17/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Larry Stuart was convicted of filming a person without her knowledge when she had

an expectation of privacy, a felony under Mississippi Code Section 97-29-63. He was

sentenced to serve five years, day for day, in the custody of the Mississippi Department of

Corrections, and he was ordered to register as a sex offender. He now appeals. Because we

find no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    In May 2017, Jane found an electronic tablet in the spare bedroom of the home she shared with her boyfriend, Stuart, and her sixteen-year-old daughter, Betsy.[1] The tablet contained a video of Stuart, who masturbated while holding Betsy's underwear. Jane recognized the underwear as a pair she bought for Betsy and knew that it had gone missing. While packing to leave the home, Jane found underwear in Betsy's drawer that neither she nor Betsy had purchased.

¶3.    When Jane returned to the home days later to collect some things, she found another tablet that contained a video of Betsy showering. Jane found more of Betsy's missing underwear in a hidden usually locked closet that Jane and Betsy were not permitted to enter.

¶4.    At some point in April 2017, Betsy had undressed and had taken a shower in her mother's bathroom, which Jane shared with Stuart. Stuart had set up a tablet to record the bathroom. Without Betsy's knowledge or consent, the tablet recorded Betsy while she changed and showered. Stuart asserted that the video was meant to record and gain evidence of Jane talking on the phone to her ex-boyfriend. Stuart asserted that he had not anticipated Betsy in the bathroom and did not intend to record her.

¶5.    Jane reported the video to the Lamar County Sheriff's Department. After an investigation, Stuart was indicted in November 2018 for filming Betsy in violation of her expectation of privacy. Miss. Code Ann. § 97-29-63(1)(a) (Rev. 2020). The trial court

---

[1] The name of the victim in this case, a minor child, as well as the name of her mother, have been changed to protect the victim's anonymity.

appointed the public defender's office, specifically, Austin Silkman, to represent Stuart. Silkman later resigned from the public defender's office, and Scotty Chabert was substituted as Stuart's counsel. Chabert received discovery in 2019, but due to some conflict, he was allowed to withdraw.

¶6.	Trial was set for August 15, 2019, with Stuart to appear on the docket August 1. Stuart failed to appear. In 2021, the trial court appointed Jack Denton, an attorney outside the public defender's office, to represent Stuart, and it allowed Denton time to prepare for trial. Trial was set for May 19, 2022.

¶7.	Stuart was scheduled to enter a guilty plea on May 9, but instead advised the trial court that he was dissatisfied and unable to communicate with Denton. The trial court gave Stuart the option to keep Denton as counsel or discharge Denton and represent himself pro se. Stuart told the trial court, "I guess I'll represent myself." The trial court announced the case would go forward as scheduled on May 19.

¶8.	On May 16, Stuart appeared with attorney Robert Whitacre. Stuart asked the trial court to appoint Whitacre to represent him, and he requested a continuance. The trial court found that Stuart had "exhausted the [c]ourt's appointment," and it declined Whitacre as lead counsel but appointed him as second-chair advisory counsel. The trial court also denied Stuart's request for a continuance, finding it was a delay tactic.

¶9.	At trial, Stuart represented himself and asserted that he did not intend to film Betsy. Whitacre submitted jury instructions; one included an accident instruction. Stuart was convicted, and the trial court sentenced him to serve five years, day for day, in the custody

3

of the Mississippi Department of Corrections. Whitacre filed post-trial motions, withdrew as Stuart's counsel, asked that the Office of Indigent Appeals be appointed to represent Stuart on appeal, and was paid for his services.

¶10. Stuart's post-trial motion for judgment notwithstanding the verdict or, alternatively, a new trial was denied. Stuart timely appealed. On appeal, Stuart asserts the trial court (1) denied his right to counsel by forcing him to represent himself, and (2) abused its discretion by denying his proposed accident jury instruction.

## **DISCUSSION**

I.       *Whether the trial court denied Stuart's constitutional right to counsel by forcing him to represent himself.*

¶11. Stuart argues his constitutional right to counsel was violated. He claims that the allowance of his appointed counsel to withdraw "forced" him to proceed to trial pro se, without counsel. This Court disagrees.

¶12. "This Court's standard of review of constitutional issues is de novo." ***Hearn v. State***, 3 So. 3d 722, 732 (Miss. 2008) (citing ***Hayden v. State***, 972 So. 2d 525, 535-36 (Miss. 2007)). "In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both[.]" Miss. Const. art. 3, § 26. "Under the Sixth Amendment of the United States Constitution, a criminal defendant has the right to represent himself only if he knowingly and intelligently chooses to do so." ***Hearn***, 3 So. 3d at 732 (citing ***United States v. Joseph***, 333 F.3d 587, 589-90 (5th Cir. 2003)).

¶13. Stuart asserts the trial court "[p]ressur[ed] [him] into self-representation" without an adequate warning. This Court has previously ruled that when a defendant functionally had

4

counsel throughout trial in the form of "hybrid representation," the Court "need not address whether [defendant] properly waived counsel or was adequately warned about proceeding pro se because he was never left to his own defense." **Hearn**, 3 So. 3d at 734 (citing **Metcalf v. State**, 629 So. 2d 558, 564 (Miss. 1993)). Hybrid representation's goal is "to strike a balance between the right to counsel and the right to self-representation." **Lofton v. State**, 248 So. 3d 798, 806 (Miss. 2018) (internal quotation marks omitted) (quoting **Henley v. State**, 729 So. 2d 232, 236 (Miss. 1998)). Hybrid representation is based on the Mississippi Constitution, which states "[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both[.]" Miss. Const. art. 3, § 26.

¶14. This Court determines if a defendant has proceeded pro se or received hybrid representation by the following factors:

> [T]he defendant's accessibility to counsel; whether and how often he consults with counsel up to the point of the request; the stage of trial at which he requests a participatory role in his defense; the magnitude of the role he desires to assume; whether the trial court encourages immediate and constant accessibility of counsel; and the nature and extent of assistance of counsel which has been provided up to the point of the request, including both procedural and substantive aid.

**Hearn**, 3 So. 3d at 734 (alternation in original) (quoting **Metcalf**, 629 So. 2d at 565).

¶15. Stuart asserts he had trouble communicating with Denton before the May 9 hearing. It does not appear from the record that Stuart started the hearing with the desire to represent himself *pro se*, as he stated he "didn't know" what solution would cure the problem of his lack of communication with Denton. The trial court was the first to suggest that Stuart proceed *pro se*; it stated, "once the public defenders' office is disqualified and you're unable

5

to work with a private attorney, the [c]ourt is not going to continue to appoint attorneys . . . you're on your own . . . [and] we will commence the trial [on May 19.]" Nevertheless, when asked for his answer, Stuart said, "I guess I'll represent myself."

¶16. The trial court did not encourage immediate and constant accessibility of counsel as was seen in *Hearn* and *Lofton*. In both of those cases, the trial court asked the appointed attorney to stay to advise the defendant rather than a simple dismissal. *Hearn*, 3 So. 3d at 734; *Lofton*, 248 So. 3d 807. Here, the trial court dismissed Denton immediately. This left Stuart without accessibility to counsel until he appeared with Whitacre on May 16.

¶17. Nonetheless, Stuart appeared to have access and assistance of counsel, both procedurally and substantively, throughout proceedings. Stuart's previous lawyers, Chabert and Denton, conducted discovery, filed pretrial motions, and prepared for trial. Whitacre was available and worked with Stuart before, throughout, and after trial.

¶18. Stuart took the role of "lead counsel" in his defense. He conducted voir dire, cross-examined witnesses, and conducted his own closing arguments. But Whitacre, as "second chair," assisted Stuart throughout the trial process. At the trial court's instruction, Whitacre was available "at Mr. Stuart's request. However, much or little he and Mr. Stuart agree[d], Mr. Whitacre c[ould] participate[.]" Whitacre argued pretrial motions, acted on Stuart's behalf to select a jury, and submitted jury instructions. Whitacre sat next to and was available to Stuart throughout the trial. Whitacre also prepared and filed post-trial motions on Stuart's behalf.

¶19. Considering the factors set forth in *Hearn*, this Court finds that Stuart was never fully

6

without the assistance of counsel through "hybrid representation" and was not forced to proceed to trial without counsel. *Hearn*, 3 So. 3d at 734 (quoting *Metcalf*, 629 So. 2d at 565). Therefore, the trial court did not deny Stuart's constitutional right to counsel.

> II. *Whether the trial court's denial of Stuart's jury instruction deprived Stuart of his fundamental right to have the jury instructed on his theory of defense.*

¶20.    Stuart argues the trial court erred by denying instruction D-5. The grant or denial of jury instructions is reviewed for an abuse of discretion, because the grant or denial of proposed jury instructions are within the sole discretion of the trial court. *Brown v. State*, 332 So. 3d 1287, 1289 (Miss. 2022) (citing *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012)).

¶21.    "[E]very accused has a fundamental right to have her theory of the case presented to a jury, even if the evidence is minimal." *Chinn v. State*, 958 So. 2d 1223, 1225 (Miss. 2007). It is "to be submitted as a factual issue to be determined by the jury under proper instruction of the court. This Court will never permit an accused to be denied this fundamental right." *Id.* (internal quotation mark omitted) (quoting *O'Bryant v. State*, 530 So. 2d 129, 133 (Miss. 1988)). The failure to grant such an instruction "constitutes reversible error." *Id.* (internal quotation mark omitted) (citing *Phillipson v. State*, 943 So. 2d 670, 671-72 (Miss. 2006)). Therefore, if a "serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused." *Brown v. State*, 39 So. 3d 890, 900 (Miss. 2010) (internal quotation marks omitted) (quoting *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009)). But "the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Valentine v.*

7

***State***, 322 So. 3d 417, 423 (Miss. 2021) (internal quotation mark omitted) (quoting ***Victory***, 83 So. 3d at 373).

¶22.　Instruction D-5 instructed the jury that "if you [the jury] find the video was created as the result of accident and without unlawful intent, then you shall find the Defendant, Larry L. Stuart, Not Guilty[.]" Stuart claims that instruction D-5 was his "theory of defense instruction on accident." Stuart's theory of defense was that "he set up the camera in order to catch [Jane] talking to another man. He expected [Jane] to go into the bathroom next [not Betsy to shower.]"

¶23.　This Court must first determine whether the "proposed instruction properly stated the law." ***Chinn***, 958 So. 2d at 1225. Mississippi Code Section 97-29-63(1)(a) (Rev. 2020) (emphasis added) states:

> It is a felony for any person with lewd, licentious or indecent *intent* to photograph, film, videotape, record or otherwise reproduces the image of another person without the permission of the other person when the other person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom[.]

In order to obtain a conviction under Section 97-29-63, "four elements must be proven: (1) *mens rea*—lewd intent; (2) lack of consent; and (3) *actus reus*—secretly recording (4) in a protected location." ***Gilmer v. State***, 955 So. 2d 829, 840 (Miss. 2007). "The *mens rea* presumption requires knowledge only of the facts that make the defendant's conduct illegal[.]" ***Staples v. United States***, 511 U.S. 600, 622 n.3, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994) (Ginsburg, J., concurring).

¶24. This Court finds that proposed instruction D-5 properly stated the law regarding Stuart's defense of accident. *Chinn*, 958 So. 2d at 1225. Indeed, it advised the jury that if it found that the "video was created as the result of accident and without unlawful intent," then a verdict of not guilty should be returned. This correctly outlined exceptions for both the *mens rea* and *actus reus* elements.

¶25. Second, this Court must examine whether the given jury instructions covered the theory of the case. *Chinn*, 958 So. 2d at 1226. "[T]he instructions actually given must be read as a whole. . . . There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law." *Newell v. State*, 49 So. 3d 66, 73-74 (Miss. 2010) (quoting *Rubenstein v. State*, 941 So. 2d 735, 784-85 (Miss. 2006)).

¶26. Instruction 7 instructed the jury on the elements of the charge and stated, "[i]n order to convict [Stuart], the State must prove that . . . [Stuart filmed] with lewd, licentious, or indecent intent[.]" The State asserts that based on the inclusion of the element "lewd, licentious, or indecent *intent*," the jury found there can be no accident. (Emphasis added.) But this Court disagrees and finds instructive the Court of Appeals' reasoning in *Pierce v. State*, 250 So. 3d 493, 500 (Miss. Ct. App. 2018), *cert. denied*, 250 So. 3d 1270 (Miss. 2018) (table).

¶27. In *Pierce*, the appellate court stated:

> the fact that the jury was given an *element instruction does not prove that an accident instruction should not have been given*. Whether the court properly refused an instruction is determined by an examination of the facts and the instructions that were given, in accordance with existing precedent, *not by an interpretation of the jury's implicit finding* as a result of an instruction that was given.

*Id.* at 500 (emphasis added). "This complex concept cannot be established by the state by relying on an instruction based on a presumption or inference. This is especially true where the key issue is whether the act was intentional or accidental." ***Funches v. State***, 246 Miss. 214, 148 So. 2d 710, 712 (1963). Therefore, this Court finds that the mere list of the elements set forth in instruction 7 does not sufficiently cover Stuart's asserted theory of defense, i.e., accident.

¶28.    Finally, this Court considers "whether there was sufficient foundation in the evidence for an accident instruction." ***Chinn***, 958 So. 2d at 1226. Even if that evidence is "meager evidence and highly unlikely[.]" *Id.* at 1225 (quoting ***O'Bryant***, 530 So. 2d at 133); *see also* ***Triplett v. State***, 666 So. 2d 1356, 1362 (Miss. 1995) (stating, "while [defendant's] trial testimony was weak, disputed, and also contradicted by his statement to the sheriff, he was entitled to have the jury instructed by an instruction specifically embracing the facts which he . . . testified occurred which would have made this killing an excusable accident"). Thus, Stuart needed to provide evidence that the video "was created as the result of accident and without unlawful intent" as he claims. ***Pierce***, 250 So. 3d at 495.

¶29.    Stuart asserted "he set up the camera in order to catch [Jane] talking to another man. He expected [Jane] to go into the bathroom next [not Betsy showering.]" He claimed this evidence was provided through his testimony and the cross-examination of Jane. Jane testified that the day the video was taken, she and Stuart "were arguing about Jane talking to somebody in the bathtub" and that Jane had just told Stuart that Jane was going to shower. This could be sufficient evidence to assert that the subject and content of the video were

accidental. But Stuart failed to submit any evidence that the video was *created or taken* on accident.

¶30. Instruction D-5 was taken from **Pierce**. **Pierce**, 250 So. 3d at 500. But Stuart is distinct from Pierce, who "testified that he had brought the phone into the room to keep time and *must have accidently turned it on* while he had oil on his fingers." ***Id.*** (emphasis added). The court found the addition of the instruction "if you find that the cell-phone video was created as the result of accident . . ." necessary because "the sole theory of Pierce's defense was that the videotaping had occurred by accident[.]" ***Id.*** at 495, 500. Distinctly, Stuart never claimed that he accidently turned on his tablet camera. Indeed, Stuart did not present any evidence that the act of pressing record or the intent to make a recording itself was done by accident.

¶31. This Court finds that Stuart was not entitled to an accident instruction. While the proposed accident instruction properly interpreted the stated law and was not covered by other jury instructions, Stuart failed to present a sufficient foundation in the evidence for an accident instruction. Thus, the trial court did not abuse its discretion by denying Stuart's proposed instruction D-5.

## CONCLUSION

¶32. Stuart was not deprived of his constitutional right to counsel, and Stuart's proposed accident instruction was properly denied. Accordingly, Stuart's conviction and sentence are affirmed.

¶33. **AFFIRMED.**

11

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**