755 So.2d 521 (1999)
Timothy POTTS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00992-COA.
Court of Appeals of Mississippi.
September 7, 1999.
*522 Leland H. Jones, III, Greenwood, Attorney for Appellant.
*523 Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Timothy Potts was convicted by a Leflore County Circuit Court jury of armed robbery. On appeal he asserts that ownership of the stolen property was not proved, that a videotape and witness's comments about it were improperly admitted, that the jury instruction on armed robbery was erroneous, and that his confessions should have been excluded. We find no error and affirm.

FACTS
¶ 2. On December 23, 1996, at approximately 10:00 a.m., two men entered a Triple Stop convenience store in Greenwood, Mississippi. Both men had their faces covered. One man had the clerk go to the cash register and open it, then ordered her to lie on the floor. The other man attempted to force the store manager to open the office door, but she did not have her keys. The man began firing into some soda crates and then in the air. The manager retrieved her keys and opened the office door. She then began to scream for help and fled the store. The perpetrators took over eight hundred dollars.
¶ 3. At some point during the robbery, one of the criminals managed to shoot himself in the ankle. This individual was Timothy Potts, the appellant. After leaving the convenience store, Potts was taken to a hospital in Grenada by some acquaintances. While Potts was treated for the injury the Grenada police were notified that there was a shooting victim at the hospital. Officer Jeremy Green questioned Potts. Potts's initial innocent explanation for the injury was soon abandoned, and he gave two separate, if somewhat divergent, confessions about his involvement in the robbery.
¶ 4. Neither worker at the store could identify the perpetrators. Derrick Bailey, who said that he drove Potts and the second robber to the store without knowing that they planned a crime, testified that after he picked Potts back up from the store he was cursing loudly about how badly his leg hurt. Bailey also was charged in the crime but was not tried with Potts.

DISCUSSION

Issue 1: Ownership of the stolen property
¶ 5. The indictment read in part that the money taken during the robbery was "the personal property of John and Mark McCaleb, d/b/a/ Triple Stop # 2, Incorporated, located at 103 Bowie Lane, Greenwood, Leflore County, Mississippi...." Potts argues that the State failed to prove that the property taken was owned in the manner stated in the indictment.
¶ 6. It was shown at trial that there was no "Triple Stop # 2, Incorporated," but that the corporate entity was simply "Triple Stop Incorporated," and that the single corporation operated stores that it numbered for its own purposes. A closer reading of the wording of the indictment also reveals that its alleges that the two McCalebs owned the money, not the corporate entity. The evidence was not totally clear on this point, but it is fair to interpret it as proving that the convenience store was operated as a corporation by the two McCalebs, and that the store's assets including cash in the register were owned by the corporation. The effect of these variances between indictment and proof is the substance of this first issue.
¶ 7. The indictment could have been amended. "All indictments may be amended as to form but not as to the substance of the offense charged." URCCC 7.09. Regardless of whether the proof showed that the property belonged to Triple Stop Incorporated, to Triple Stop # 2 Incorporated, or to John and Mark *524 McCaleb as the only two shareholders in that company, no defect of substance exists. An opinion regarding a larceny conviction demonstrates the benign nature of the defect:
The description of an indictment must be of sufficient particularity to enable the court to determine that such property is the subject of larceny and to advise the accused with reasonable certainty of the accusation he will be called upon to meet at the trial and to enable him to plead the judgment rendered thereat in bar of a subsequent prosecution for the same offense without other proof. For the variance between the indictment and the proof to be fatal, however, it must be a material and prejudicial variance.
Cooper v. State, 639 So.2d 1320, 1323 (Miss.1994), quoting Jackson v. State, 450 So.2d 1081, 1082 (Miss.1984) (citation omitted). More specifically, the court affirmed a conviction when the reference in the indictment to the robbery victim was to the "First National Bank," though the correct name was "The First National Bank of Jackson, Mississippi," which was a corporation. "Had the appellant mentioned the variance in her motion for a directed verdict, during the trial or in her motion for a new trial, the indictment could then have been amended." Banks v. State, 394 So.2d 875, 877 (Miss.1981) (emphasis added).
¶ 8. This means that the defect could have been corrected. The State never asked for an amendment, but neither did Potts raise the issue until a motion for a new trial. Under Banks this objection was timely made. Whether Banks is still a valid view of the timeliness of the objection should be addressed. A circuit court rule provides that all requests for an order from the trial court must be by motion, suggesting that a motion to quash or dismiss is the means for a defendant faced with a defect in the indictment to proceed. URCCC 6.07. By a statute that the supreme court has nonetheless still applied, an objection to a defect in the indictment that is obvious on its face must be by demurrer. Miss.Code Ann. § 99-7-21 (Rev.1994), cited in Brandau v. State, 662 So.2d 1051, 1054 (Miss.1995). When the complaint is about a defect that appears on the face of the indictment, the demurrer must be made in non-capital cases before the jury is impaneled "and not afterwards." Miss.Code Ann. § 99-7-21 (Rev. 1994). This defect was not on the face but arose from a variance in the proof.
¶ 9. The caption to the pleading is inconsequential for our purposes; timeliness is the focus. Even though Banks allowed the objection to be made as late as a motion for new trial, a time in which the benefits of an amended indictment are difficult to fathom, more recent case law has said the objection must be lodged earlier. For example, in one robbery appeal the indictment had charged theft of the property of "Venus Ainsworth d/b/a Ainsworth Furniture Company," while the proof revealed that both a corporation, Ainsworth Furniture Company, Inc., and Ainsworth, individually, owned the property. Williams v. State, 445 So.2d 798, 805 (Miss.1984). Absent an objection at the time that evidence of ownership was introduced, the court held that the issue of a variance was waived. Id. A motion for new trial would not be adequate. Somewhat more dated but even more clearly, the supreme court said that "[w]e have consistently held that where there is a variance between the indictment and the proof as to ownership [of stolen property], objection should be made thereto specifically during the trial, and that it is too late to raise the objection after verdict, and further, that such an objection cannot be raised by a request for a peremptory instruction." Rodgers v. State, 222 Miss. 23, 27-28, 75 So.2d 42, 43 (1954). The peremptory instruction request would have to occur before the motion for new trial.
¶ 10. We find no case other than Banks that would suggest a motion for new trial is a timely pleading in which to raise the matter. The technical defect is the variation *525 between the charging instrument and the proof on a matter of form. By the time of a motion for new trial, the instructions that guided the jury in their deliberations on that proof have already been drafted, presented, and used. Whether the instructions conformed more to the indictment or to the proof, any doubts that the jury might have had were resolved in favor of conviction. There simply is no purpose served by changing the indictment at that time unless somehow the accused were thereby to gain a new trial. No case law implies that; indeed, a matter of form is eminently waivable. Correcting a matter of form during trial or afterwards should not necessitate starting the whole proceeding over.
¶ 11. We determine that the statement in Banks that it is proper to wait until the motion for new trial to raise the issue of a variance that is only a matter of form is inconsistent with the jurisprudence in this area. It is a principle that was not applied even in Banks nor in any subsequent appeal. Consequently, the inconsistencies in the manner in which ownership of the money stolen in this robbery was both charged and proved do not gain Potts a reversal.
¶ 12. We are further convinced of the accuracy of this approach by the absence of any claim by Potts that his defense was premised on the ownership of the property as alleged in the indictment. The supreme court has held it sufficient that the indictment "specify the date, the property taken, and the location from which it was taken." Cooper, 639 So.2d at 1323. The indictment against Potts stated the property was taken on December 23, 1996, that money in the "amount of approximately one dollar or more" was the property taken, and that the location at which this occurred was "103 Bowie Lane, Greenwood, Leflore County, Mississippi." That is enough.

Issue 2: Admission of videotape and comments by witness regarding the tape
¶ 13. This issue questions whether admitting the tape constituted "undue delay, waste of time, or needless presentation of cumulative evidence," and whether the testimony by store manager Yolanda Sproles regarding the tape exceeded the permissible bounds regarding opinion and inference testimony. The State argues this issue is waived because the grounds on appeal differ from those at trial. Potts objected at trial that the video was impermissible bolstering and that Sproles's testimony was the best evidence. He objects on appeal that Sproles "was essentially telling the jury what they were seeing." While the latter grounds are not identical, they are sufficiently similar to the concerns enunciated at trial to avoid a procedural bar. Whether there is any merit to the argument is an entirely separate matter.
¶ 14. The tape gives a perspective on the events and allowed the jurors a means to judge the credibility of the witness. The tape is an independent and simultaneous account of what transpired. The tape was no more cumulative of the witness's testimony than are photographs of a crime scene.
¶ 15. Not only was the tape played for the jury, but the witness commented about what was occurring on the tape. The tape was less than clear in its quality. There are references to the tape not running smoothly. Sproles's statements arguably were helpful to the jury in ascertaining the time frame of the events so long as Sproles was describing what she experienced. This was not opinion testimony by non-expert witnesses as Potts alleges, but a recounting of an experience that both the witness and the camera observed. Rules of Evid., 701. This situation should be distinguished from a case relied on by Potts, in which the witness made statements about the defendant's actions on a video when the witness had no first hand *526 knowledge of the events. Wells v. State, 604 So.2d 271, 279 (Miss.1992). Here, Sproles was speaking from personal experience.

Issue 3: Sufficiency of the State's jury instruction on armed robbery

a. The State's instruction
¶ 16. The indictment charged that Potts "by the exhibition of a deadly weapon, to wit: a pistol, wilfully and feloniously put Yolanda Sproles and Renee Smith in fear of immediate injury to their persons; and, did unlawfully, wilfully, feloniously and violently take, steal, and carry away" money from these victims. Potts never challenged the indictment through a motion to dismiss, nor do we see a basis to have successfully done so. The indictment charged robbery both by placing in fear and by violence. Potts's argument is that despite the language of the indictment, the State must elect in its jury instructions as to which method is supported by the proof and cannot "leave it to the jury to decide which action constituted the factual basis for their final verdict."
¶ 17. First, the indictment may properly charge alternative means of committing a robbery:
"A statute often makes punishable the doing of one thing, or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction, a person who in one transaction does all violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction `and' where the statute has `or,' and it will not be double, and it will be established at the trial by proof of any one of them." 1 Bishop's Crim. Proc. § 436.
Coleman v. State, 94 Miss. 860, 863, 48 So. 181, 182 (1909).
¶ 18. More recently, the supreme court reiterated that "where a statute denounces as an offense two or more distinctive acts, things, or transactions enumerated therein in the disjunctive, the whole may be charged conjunctively and the defendant found guilty of either one." Lenoir v. State, 237 Miss. 620, 623-24, 115 So.2d 731, 732 (1959). The offense of robbery can be committed either by placing the victim in fear or by violence. Miss. Code Ann. § 97-3-73 (Rev.1994). That disjunctive statutory description of the offense was then charged in the indictment conjunctively as already quoted.
¶ 19. Therefore the remaining issue is whether the State had to choose between the alternatives at the time of instructing the jury. We have been pointed to no specific Mississippi authority on the issue nor have we discovered any. Such precedents as exist from other jurisdictions permit giving an instruction on the alternatives and upholding the conviction if the evidence is sufficient as to one of them. E.g., United States v. Beckner, 134 F.3d 714, 718 (5th Cir.1998) ("when an indictment charges several acts in the conjunctive, the verdict must stand if the evidence is sufficient with respect to any one of the acts charged"); Stander v. State, 226 Ga. App. 495, 486 S.E.2d 712, 714 (1997) (burglary committed when, with the intent to commit a felony therein, accused "enters or remains" within another's dwelling; proper on indictment alleging "enter and remain" for court to instruct jury that evidence sufficient if it proved either "enter or remain" in the dwelling).
¶ 20. We also find clear acceptance of what occurred here in the following authority:
Where the relevant statute lists alternative means of violation, "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with *527 respect to any of the acts charged." Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). This rule obviously extends to a trial court's jury instructions in the disjunctive in the context of a conjunctively worded indictment.
U.S. v. Cusumano, 943 F.2d 305, 311 (3d Cir.1991). The rule followed in most states is the same:
The State, on the other hand, argues that it is only required to prove that Yates was authorized to either exhibit or advertise obscene devices or that she had decision-making power to either exhibit or advertise obscene devices. The State further argues that it is proper to allege alternative means by which a crime is committed and it is only necessary for it to prove one means. Ortiz Salazar v. State, 687 S.W.2d 502, 504 (Tex.App.Dallas 1985, pet. ref'd). Thus, the State argues, the evidence is sufficient to support the conviction if there is evidence that Yates either exhibited the obscene devices, or that she advertised them, or both.
We agree with the State that it is proper to charge in the conjunctive and prove in the disjunctive and that a finding by the jury of either exhibiting or advertising would be sufficient, see Ortega v. State, 668 S.W.2d 701, 707 (Tex. Crim.App.1983), if the trial court in its application of the law to the facts instructs the jury in the disjunctive.
Yates v. State, 766 S.W.2d 286, 288 (Tex. App.-Dallas 1989).
¶ 21. We find this reasoning persuasive. In submitting instructions, the State does not have to choose between optional means of committing a crime if they are properly joined in the indictment, at least not absent a failure of proof on one of the options. This means that a conviction is justified even if half the jurors believe beyond a reasonable doubt that violence caused the robbery and the other half believe that it was fear. That is apparently a form of potential disharmony that most courts have found to be irrelevant to the unanimity necessary for a verdict of guilt.

b. Cause and effect relationship between the taking of the money and the victims' fear
¶ 22. Potts next argues that "the State failed to prove any connection between `putting in fear' and the taking which occurred." His argument is essentially that while the State demonstrated the victims were afraid, it never showed this fear caused them to relinquish the money. We do not question that a causal relationship between fear and relinquishment of property must be shown. Jones v. State, 567 So.2d 1189, 1192 (Miss.1990). The question here is whether the proof failed to show the connection. Two masked men entered the store, one or both of whom was armed. The manager was threatened and during the course of the robbery shots were fired and property was damaged. Both victims testified they were afraid, though one at first testified she was not. This scenario had all the makings of a violent and potentially lethal event. Indeed, so violent was Pott's conduct that he managed to shoot himself. The inference from such evidence that the fear of harm caused the surrendering of the money is all but inescapable.

Issue 4: Admissibility of Potts's two confessions
¶ 23. The State entered into evidence two confessions by Potts, the admissibility of which Potts now challenges. The supreme court has articulated the requirements for admitting a confession.
The State shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary. The State's burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer *528 of reward. A trial judge's findings of fact on the issue of admissibility of a confession will not be overturned unless it is clearly erroneous or contrary to the overwhelming weight of the evidence.
Richardson v. State, 722 So.2d 481, 487 (Miss.1998) (citations omitted).
¶ 24. Detective Ronald Cade testified that the first of the two confessions was obtained by him some hours after Potts had undergone surgery for the bullet wound in his ankle. There was evidence that the lapse in time between Potts's surgery and his confession was at most six hours. Potts signed a waiver of rights form stating that he understood his rights, was willing to talk and make a statement without an attorney, and that no promises, pressure, threats, or coercion were applied against him. The second confession was obtained the next day after Potts was again read his rights and signed a waiver form. Both waiver of rights forms and confessions were introduced into evidence.
¶ 25. There was no objection at trial that Potts's medical treatment or physical condition made the confessions involuntary. On appeal, however, Potts contends that neither confession was admissible because his condition did not allow him knowingly and intelligently to waive his rights. We will not assume that Potts's mind was still so clouded by the anesthesia, less than six hours after it was administered, that he could not have knowingly and intelligently waived his rights and thereby voluntarily confessed. The place for Potts to have begun this argument was at trial by putting on competent evidence about the effects of anesthesia and the surgery. On appeal this court is limited to a review of the record. That record provides no support for Potts.
¶ 26. THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.